# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:04CV267

| | |
|---|---|
| SHARON FOWLER,<br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br>    Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on the "Plaintiff's Motion for Summary Judgment" and "Plaintiff's Memorandum in Support..." (Document Nos. 12 and 13), filed December 6, 2004 by Sharon Fowler; and the "Motion for Summary Judgment" and "Memorandum in Support..." (Document Nos. 14 and 15) filed February 3, 2005 by the defendant, Jo Anne B. Barnhart, Commissioner of the Social Security Administration. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for the Court's consideration.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend Ms. Fowler's motion for summary judgment be <u>denied</u>, the Commissioner's motion for summary judgment be <u>granted</u>, and the Commissioner's decision be <u>affirmed</u>, as discussed below.

# I. PROCEDURAL HISTORY

On August 10, 2001, Ms. Fowler applied for disability insurance benefits, alleging she became disabled on February 20, 2000.[1]  (R. 80-82.)  Ms. Fowler's claim was denied initially and again on reconsideration.

Ms. Fowler requested a hearing, which was held on February 12, 2003.  (R. 25-63.)  On March 17, 2003, the Administrative Law Judge ("ALJ") issued an opinion denying Ms. Fowler's claim. (R. 12-20.)  Subsequently, Ms. Fowler filed a Request for Review of Hearing Decision.  The Appeals Council denied Ms. Fowler's request for review, making the hearing decision the final decision of the Commissioner.  (R. 5-7.)

Ms. Fowler filed this action on June 1, 2004, and the parties' cross-motions for summary judgment are ripe for this Court's consideration.

# II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405 (g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Id. (quoting Perales, 402 U.S. at 401).

---

[1]Ms. Fowler later amended the onset date of her disability to October 16, 2000.  (R. 76.)

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner - so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Ms. Fowler became "disabled" as the term is defined for Social Security purposes.[2] The ALJ concluded that the medical evidence established that Ms. Fowler had "severe" disorders involving arthritis of the right arm and leg and had a fracture of the right shoulder, but that she did not have an impairment or combination of impairments which met or medically equaled the level of severity listed in Appendix 1, Subpart P, Regulations No. 4. (R.

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

17.) The ALJ further found that Ms. Fowler retains the residual functional capacity to perform a full range of sedentary jobs and light jobs which have a sit/stand option. (R. 18.) Based on her residual functional capacity, Ms. Fowler could still perform her past relevant work "as generally performed in the national economy." (R. 19.) Accordingly, the ALJ concluded that Ms. Fowler was not disabled.

Ms. Fowler assigns four points of error: (1) the ALJ erred in his assessment of Ms. Fowler's residual functional capacity, (2) the ALJ erred in finding that Ms. Fowler could return to her past relevant work, (3) the ALJ did not provide a rationale for his credibility determinations, (4) the ALJ improperly relied upon Ms. Fowler's receipt of unemployment benefits. For the reasons that follow, the Court disagrees with Ms. Fowler's objections.

**Residual Functional Capacity**

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The residual functional capacity assessment is based on all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. § 404.1545(a).

In his decision, the ALJ found Ms. Fowler has a residual functional capacity for a full range of sedentary jobs, as well as light jobs which have a sit/stand option. Ms. Fowler disputes this finding and argues that the ALJ did not correctly consider her limited ability to use her right shoulder. Substantial evidence, however, supports the ALJ's conclusion regarding Ms. Fowler's residual functional capacity.

Dr. Jerry Barron treated Ms. Fowler's shoulder injury. He first examined her on November 5, 1999 and performed surgery on November 9, 1999. (R. 172.) On January 1, 2000, Dr. Barron reported that although Ms. Fowler was not back to full strength or range of motion, she was progressing nicely and having little or no pain. (R. 173.) Finally, on February 2, 2000, Dr. Barron decided Ms. Fowler was ready to return to work. (R. 174.) He restricted her to lifting no more than 10 pounds with no overhead lifting. (R. 174.) She was directed to follow these restrictions for 6-8 weeks, and then return to her normal duties. (R. 174.)

On September 11, 2001, Dr. Tomlinson completed a Physical Residual Capacity Assessment on Ms. Fowler. Dr. Tomlinson concluded Ms. Fowler could occasionally lift fifty pounds, could frequently lift 25 pounds, could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, could sit (with normal breaks) for a total of about six hours in an eight-hour workday, and had unlimited ability to push and/or pull. (R. 110.) Dr. Tomlinson noted Ms. Fowler had limited reach with her right arm, but unlimited reach with her left arm. (R. 112.) Dr. Tomlinson noted no other limitations. Ms. Fowler was given a Residual Functional Capacity of "medium" with some manipulative restrictions. (R. 116.)

Based on the foregoing, the ALJ concluded that Ms. Fowler is capable of lifting up to ten pounds and has no difficulty sitting and, therefore, is capable of performing sedentary work, and light work activity that does not require long periods of standing. Substantial evidence supports this finding.

**Past Relevant Work**

The ALJ concluded Ms. Fowler could return to her work as a medical secretary, as that job is performed within the national economy. Ms. Fowler objects to this conclusion. She argues she

5

cannot return to work as a medical secretary because it requires reaching and because she never actually performed that job. However, her previous title was medical secretary and she did perform some of the duties of the job, as it is defined by DOT. Ms. Fowler has failed to meet her burden that she could not perform the job based upon her residual functional capacity. Substantial evidence exists that Ms. Fowler could perform the job of medical secretary as it is performed in the national economy.

It is Ms. Fowler's burden to establish that she has a physical or mental impairment that prevents her from returning to her past relevant work. Hall v. Harris, 658 F.2d, 264 (4th Cir. 1981). To determine whether Ms. Fowler can return to her past relevant work, the ALJ must decide "if [the claimant] is capable of performing [her] past relevant work either as [she] performed it in the past *or* as it is generally required by employers in the national economy. Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995); SSR 82-61. By satisfying either test, a claimant may be found to be not disabled. see also Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990) ("The two tests [in SSR 82-61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.").

Previously, Ms. Fowler's jobs were classified as medical records clerk and medical secretary. She was classified as a medical records clerk from 1978 to February 1999. (R 86.) The Dictionary of Occupational Titles ("DOT") defines medical records clerk as:

> Compiles, verifies, types, and files medical records of hospital or other health care facility: Prepares folders and maintains records of newly admitted patients. Reviews medical records for completeness, assembles records into standard order, and files records in designated areas according to applicable alphabetic and numeric filing system. Locates, signs out, and delivers medical records requested by hospital departments. Compiles statistical data, such as admissions, discharges, deaths, births, and types of treatment given. Operates computer to enter and retrieve data and type correspondence and reports. May assist other workers with

coding of records. May post results of laboratory tests to records and be designated Charting Clerk.

DOT #245.362-010.

She was then classified as a medical secretary from early 1999 until February 2000. (R. 86.) Ms. Fowler claims she never performed the duties of a medical secretary as defined in the DOT. The DOT defines medical secretary as

> Performs secretarial duties, utilizing knowledge of medical terminology and hospital, clinic, or laboratory procedures: Takes dictation in shorthand or using dictaphone. Compiles and records medical charts, reports, and correspondence, using typewriter or word processor. Answers telephone, schedules appointments, and greets and directs visitors. Maintains files.

DOT #201.362-014. Even though her title had changed, Ms. Fowler claims her duties where similar to the duties of a medical records clerk. DOT #245-362-010. She testified her work as a medical secretary

> was just the same as me being in medical records because I had to pull x-ray files, I had to take x-ray files to the doctor and, let me see what else did I do. I would file x-ray papers and sometimes I would have to go up another floor to make sure that the doctor got their x-ray files on time.

Using the Pass test, the ALJ determined Ms. Fowler could perform the job of medical secretary as it is performed in the national economy. Based on the evaluations of Dr. Barron and Dr. Tomlinson it would be within Ms. Fowler's residual functional capacity to perform the job of medical secretary. It is the plaintiff's burden to establish that she is unable to perform the duties required. See Hunter, 933 F.2d at 35. Ms. Fowler argues the combination of the limited range of motion in her right shoulder, along with the reaching requirements of the job, would prevent her from working as a medical secretary. Although the job requires some reaching, Ms. Fowler has not sufficiently shown that this reaching must be done with the right arm and could not be completed

with her left arm. She has also not demonstrated that the reaching would be anything more than occasional, or require the use of both hands. Therefore, there is substantial evidence to support the ALJ's conclusion that Ms. Fowler could return to work as a medical secretary.

However, even if the ALJ had found that Ms. Fowler's impairment prevented her from doing her past relevant work, there is substantial evidence in the record that other work exists in significant numbers in the national economy that accommodates her residual functional capacity. On September 14, 2001, a Vocational Analysis was performed by Iris McKoy on Ms. Fowler. Ms. McKoy determined Ms. Fowler has a Residual Functional Capacity of "medium" with manipulative restrictions. (R. 117.) This analysis was not an evaluation of Ms. Fowler's ability to perform her past relevant work. (R. 117.) It did, however, indicate there were jobs in the economy which Ms. Fowler could perform that do not involve overhead reaching. Specifically, Ms. McKoy determined Ms. Fowler could perform jobs such as a linen grader, folder, or lining scrubber. (R. 119.) These jobs are classified as laundry and related jobs and exist in significant amounts in both the North Carolina and national economies. (R. 119)

### Plaintiff's Credibility

The ALJ found that Ms. Fowler's "allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." ( R. 19). Ms. Fowler argues that the ALJ provided no reasons for this determination. The Court disagrees with Ms. Fowler.

Ms. Fowler testified at her hearing before the ALJ that she is able to perform essentially all of her household and essential duties, including driving, sweeping, vacuuming, making the beds, laundry, and pouring from a gallon jug, which the ALJ noted weighs about eight pounds. (R. 39, 44). The ALJ expressly referred to this testimony in his decision. ( R. 17). Although not referred

to by the ALJ, it is noteworthy that Ms. Fowler also testified that she had done some fishing in the summer. When she fishes she sits or stands and "throws the line." ( R. 37).

Other factors explicitly referred to by the ALJ in his decision include the fact that she had been seen by her treating physicians fairly frequently between August 1998 and December 2001 complaining of pain, but was never placed on any restrictions as a result of these complaints. One of her treaters found her to suffer no pain during examination, and another found that she was not tender to palpation in the area complained of. ( R. 18). Moreover, the ALJ noted that following her surgery in November of 1999, Ms. Fowler was released to return to work in February 2000 with some minor restrictions for a period of two months "before returning to regular duty." The ALJ also stated that Ms. Fowler did, in fact, return to work as a medical secretary at the clinic. ( R. 18).

As the Fourth Circuit noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in medical evidence." Seacrist, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, it is the decision of the Commissioner to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King, 599 F.2d at 599; Seacrist, 538 F.2d at 1056-57. The Court concludes the ALJ properly considered and evaluated the evidence to resolve inconsistencies that may have been present. Substantial evidence supports the ALJ's finding that Ms. Fowler's allegations regarding her limitations were not totally credible.

**Unemployment Benefits**

The ALJ took note of the fact that Ms. Fowler had originally attempted to receive Social Security disability at the same time she was receiving unemployment benefits. The ALJ stated, "[i]t is a logical conclusion that if the claimant was receiving unemployment benefits, she was actively looking for new employment, and presenting herself as being able to return to work." ( R. 19). The

9

apparent inconsistency identified by the ALJ is that a person receiving unemployment presents herself as willing and able to work, while a person receiving Social Security disability presents herself as unable to perform work. Ms. Fowler asserts that the ALJ improperly concluded that her receipt of unemployment benefits disqualified her for Social Security disability benefits.

In Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), the United States Supreme Court explained that a claimant who proceeds under a contention of failure to accommodate a disability under the Americans with Disabilities Act can still apply for Social Security benefits, so long as the claimant can explain how two apparently conflicting claims can co-exist. Cleveland, 526 U.S. at 802-806. In light of Cleveland, it seems Ms. Fowler must sufficiently explain how her applying for Social Security disability did not conflict with her application for unemployment benefits under the provisions of the North Carolina unemployment statute, which conditions the receipt of benefits on the person's willingness and ability to work.

Ms. Fowler originally alleged disability as of February 20, 2000, the day the clinic where she worked closed. (R. 30, 94.) When the apparent contradiction was pointed out to Ms. Fowler, she amended the onset date of her disability to October 16, 2000, the day her unemployment benefits ended. (R. 76-78.) Ms. Fowler has not demonstrated why the onset date was changed other than to avoid explaining the contradiction which arose. Furthermore, the Court finds no medical evidence in the record supporting either the original or amended onset of disability dates.

The Court disagrees with Ms. Fowler's contention that the ALJ's treatment of these facts was improper. The ALJ, in identifying the inconsistency presented by these facts, was merely noting the different programs with different rules for entitlement and how that might bear on her credibility. Although the timing of her initial Social Security application, along with her receipt of

unemployment benefits, and the fact that she changed the onset date of her disability, may have affected the ALJ's credibility determination, it does not appear that the inconsistency in this case was in and of itself a disqualifying factor in the overall analysis.

Because this Court concludes that substantial evidence supports the ALJ's determinations regarding Ms. Fowler's residual functional capacity, her ability to return to her past relevant work, and her credibility, this Court finds Ms. Fowler is not disabled for Social Security purposes.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "Plaintiff's Motion for Summary Judgment" (Document No. 12) be **DENIED**; the Commissioner's "Motion for Summary Judgment" (Document No. 14) be **GRANTED**; and the Commissioner's decision be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham C. Mullen.

Signed: July 17, 2006

*(signature)*

David C. Keesler
United States Magistrate Judge